

08 CV 3989

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUDGE CASTEL

-------------------------------------------------------------------X

GRANADA TRADE CO.,

               Plaintiff,

    - against -

BEIJING SEALUCKLY SHIPPING INTERNATIONAL
CO. LIMITED a/k/a BEIJING SEALUCKY SHIPPING
INTERNATIONAL CO. LTD.,

               Defendant.

-------------------------------------------------------------------X

08 Civ. ____

ECF CASE

RECEIVED
APR 29 2008
U.S.D.C. S.D. N.Y.
CASHIERS

## VERIFIED COMPLAINT

Plaintiff, GRANADA TRADE CO. (hereinafter "Plaintiff"), by and through its attorneys,

Lennon, Murphy & Lennon, LLC, as and for its Verified Complaint against the Defendant,

BEIJING SEALUCKLY SHIPPING INTERNATIONAL CO. LIMITED a/k/a BEIJING

SEALUCKY SHIPPING INTERNATIONAL CO. LTD. (hereinafter "Defendant"), alleges,

upon information and belief, as follows:

1.    This is an admiralty and maritime claim within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure and 28 United States Code § 1333. This claim involves a

breach of maritime contract of charter. This matter also arises under the Court's federal question

jurisdiction within the meaning of 28 United States Code § 1331 and the New York Convention

on the Recognition and Enforcement of Foreign Arbitral Awards (9 U.S.C. § 201 *et seq.*) and/or

the Federal Arbitration Act (9 U.S.C. § 1 *et seq.*).

2.    At all times material to this action, Plaintiff was, and still is, a foreign corporation,

or other business entity organized and existing under the laws of Malta.

3.    Plaintiff was at all material times the Owner of the ocean going vessel

"YU YIN" (hereinafter the "Vessel").

4.    Upon information and belief, Defendant was, and still is, a foreign corporation, or other business entity organized and existing under foreign law.

5.    By a charter party dated March 6, 2008 ("Charter Party"), the Plaintiff chartered the Vessel to Defendant for the carriage of cargo which included steel pipes ("cargo") by sea. *See Exhibit "1" annexed hereto.*

6.    Pursuant to the Charter Party, on the evening of March 22, 2008, loading of the cargo commenced at Lianyungang, China.

7.    Shortly after loading commenced, the Master of the Vessel noticed that the cargo being loaded was wet and rusty.

8.    As the cargo was wet and rusty, the Master prepared a notice of protest which was issued at the earliest opportunity, the following morning, March 23, 2008.

9.    The Charter Party provides that the Master has the right to reject rusty cargo.

10.    The Master therefore informed the Defendant that he was not prepared to issue clean bills of lading.

11.    Defendant protested and insisted that the Master issue clean bills of lading, notwithstanding the fact that the cargo was rusty.

12.    Defendant then wrongfully (in bad faith and/or with knowledge that the facts underlying the application were false) applied for and obtained an Injunction and Order from the local Chinese Maritime Court.

13.    The Injunction and Order provided that the cargo was to be discharged on the following bases: (1) the Master refused to sign clean bills of lading; and (2) the Vessel was unseaworthy.

14.    Pursuant to the Injunction and Order, the Master commenced discharging on March 26, 2008.

2

15.    The two bases of the Injunction and Order were, and are, groundless.  *See Exhibit "2," annexed hereto.*

16.    Defendant based its claim of unseaworthyness on the theory that the Master and Second Officer did not have certain required certificates and/or certifications

·    17.    In fact, the relevant crew members did possess the necessary certificates and/or certifications and were able to provide them immediately upon request so that the Vessel was never actually detained or deemed unseaworthy.

18.    In addition, Plaintiff instructed an expert surveyor to attend the Vessel during the Court mandated discharge operation, and he was able to confirm that the cargo was sufficiently rusty to merit the Master's refusing to sign clean bills of lading therefore.

19.    Although the Charter Party allowed the Defendant to provide a replacement cargo, it chose not to do so.

20.    Upon information and belief, Plaintiff believes that after discharge the rusty cargo was immediately loaded onto another waiting vessel at Lianyungang.

21.    Therefore, Defendant breached the Charter Party by failing to provide a valid cargo.

22.    Plaintiff was able to partially mitigate its losses by arranging a replacement charter from Shanghai to Turkey, which commenced on April 10, 2008.

23.    However, even taking into account the mitigation charter, as a result of Defendant's failure to provide a valid cargo in breach of the Charter Party, Plaintiff sustained substantial damages, including but not limited to, lost profits, legal costs and fees, delays in the charter (incurring detention charges) and losses related to positioning the Vessel at Lianyungang for the original charter.

3

24.     Under the Charter Party, which was to run from March 26, 2008 until April 29, 2008 (33.4 days), Plaintiff would have earned a total profit of $312,507.48. *See Exhibit "3,"* *annexed hereto.*

25.     Under the mitigation charter which commenced on April 10, 2008, Plaintiff earned a profit of $205,031.90 up until April 29, 2008.

26.     Thus, Plaintiff's loss of profit damages amount to $107,474.58.

27.     Furthermore, pursuant to the Charter Party, detention charges are to accrue at $5,000.00 per day.

28.     The Vessel was delayed for approximately five days due to Defendant's failure to provide a valid cargo in breach of the Charter Party.

29.     Thus, detention charges accrued for Defendant's account in the approximate amount of $25,000.00.

30.     In positioning itself at Liangyungang (from Qingdao) for the charter, the Vessel used 10.13 mt of bunkers ($5,672.80).

31.     Plaintiff also incurred approximately $30,000.00 in legal fees and costs in relation to the Injunction and Order wrongfully obtained by Defendant.

32.     Plaintiff is entitled to recover both the positioning and legal fees and costs from Defendant in the underling proceeding(s).

33.     As a result of Defendant's breach of the Charter Party, Plaintiff sustained damages in the principal amount of $168,148.38 exclusive of interest, arbitration costs and attorney's fees.

34.     Pursuant to the charter party, all disputes arising thereunder were to be submitted to arbitration in London with English Law to apply.

4

35.    Plaintiff will commence arbitration in London and/or suit in the Chinese courts after the commencement of this action and jurisdiction is obtained over the Defendant.

36.    This action is brought in order to obtain jurisdiction over the Defendant and also to obtain security for Plaintiff's claims in aid of arbitration proceedings. Plaintiff further reserves its right to initiate litigation in the Chinese courts.

37.    Interest, costs and attorneys' fees are routinely awarded to the prevailing party under English Law. Section 63 of the English Arbitration Act of 1996 specifically allows for recovery of these items as part of an award in favor of the prevailing party. As best as can now be estimated, Plaintiff expects to recover the following amounts at arbitration as the prevailing party:

|  | | |
|---|---|---|
| A. | Principal claim: | |
| | Lost profits: | $107,475.58 |
| | Detention charges: | $ 25,000.00 |
| | Bunkers used in positioning Vessel at Lianyungang: | $   5,672.80 |
| | Legal fees and costs expended in relation to wrongful Injunction and Order: | $  30,000.00 |
| Sub-Total: | | $168,148.38 |
| B. | Estimated interest on claim - 3 years at 7.0% compounded quarterly: | $  38,916.15 |
| C. | Estimated arbitration costs, attorneys fees and expenses: | $  65,000.00 |
| **Total:** | | **$272,064.53** |

38.    The Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendant has, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court,

in the possession of one or more garnishees which are believed to be due and owing to the Defendant.

39.    The Plaintiff seeks an order from this Court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching, *inter alia*, any property of the Defendant held by any garnishee within the District for the purpose of obtaining personal jurisdiction over the Defendant, and to secure the Plaintiff's claims as described above.

**WHEREFORE,** Plaintiff prays:

A.    That process in due form of law issue against the Defendant, citing it to appear and answer under oath all and singular the matters alleged in the Verified Complaint;

B.    That the Court retain jurisdiction to compel the Defendant to arbitrate in accordance with the United States Arbitration Act, 9 U.S.C. § 1 *et seq.*;

C.    That pursuant to 9 U.S.C. §§ 201. *et seq.*, the Uniform Recognition of Money Judgments Act and/or the doctrine of comity this Court recognize and confirm any arbitration award and/or judgment rendered on the claims had herein as a Judgment of this Court;

D.    That since the Defendant cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching all tangible or intangible property of the Defendant within the District, including but not limited to any funds held by any garnishee, which are due and owing to the Defendant, up to the amount $272,064.53 to secure the Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

6

E.    That in the alternative, this Court enter Judgment against Defendant on the claims

set forth herein;

F.    That this Court retain jurisdiction over this matter through the entry of any

judgment or award associated with any of the claims currently pending, or which may be

initiated in the future, including any appeals thereof;

G.    That this Court award Plaintiff its attorney's fees and costs of this action; and

H.    That the Plaintiff have such other, further and different relief as the Court

may deem just and proper.

Dated: April 29, 2008
       Southport, CT

                          The Plaintiff,
                          GRANADA TRADE CO.

                     By:
                          Nancy R. Peterson
                          Patrick F. Lennon
                          LENNON, MURPHY & LENNON, LLC
                          420 Lexington Ave., Suite 300
                          New York, NY 10170
                          (212) 490-6050 – phone
                          (212) 490-6070 – fax
                          nrp@lenmur.com
                          pfl@lenmur.com

## ATTORNEY'S VERIFICATION

State of Connecticut  )
                      )    ss.:    Town of Southport
County of Fairfield   )

1.  My name is Nancy R. Peterson.

2.  I am over 18 years of age, of sound mind, capable of making this

Verification, and fully competent to testify to all matters stated herein.

3.  I am an attorney in the firm of Lennon, Murphy & Lennon, LLC, attorneys for the

Plaintiff.

4.  I have read the foregoing Verified Complaint and know the contents

thereof and believe the same to be true and accurate to the best of my knowledge, information

and belief.

5.  The reason why this Verification is being made by the deponent and not

by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now

within this District.

6.  The source of my knowledge and the grounds for my belief are the

statements made, and the documents and information received from, the Plaintiff and agents

and/or representatives of the Plaintiff.

7.  I am authorized to make this Verification on behalf of the Plaintiff.

Dated:      April 29, 2008
            Southport, CT

                                            Nancy R. Peterson

8

# EXHIBIT "1"

## FIXTURE NOTE

IT IS MUTUALLY AGREED THIS DAY 6TH MARCH 2008 BETWEEN THE BELOW MENTIONED OWNERS AND CHARTERERS UNDER THE FOLLOWING TERMS AND CONDITIONS:

OWNERS: GRANADA TRADE COMPANY – MALTA
CHARTERERS: BEIJING SEALUCKLY SHIPPING INTERNATIONAL CO., LTD

1.VESSEL: MV YU YIN S.DECK - BOX SHAPE ;PANAMA FLAG;CCS CLASS;BLT 1996;DWT/DWCC    55563000MT    ON    SSW6.38M;LOA 88M    V8.5×16.3M,GR GNET 4048/1539,GEARLESS;5/5 HO 69627/6092 CHM; 2H/2H;HATCH SIZE NO. 2:19.5×12M,NO.3:27.7×12.6M HLD SIZE:1#21.45×12.8×8.16,2#39.05×12.6×8.16M. ADA ≈ WDG
OWR GUARANTEE DWCC 50000MT
end.

2.CARGOES: GENERAL CARGO (MAINLY STEEL PIPE AND SO ON) UP TO FULL AND COMPLETE CARGO OF VESSEL'S CAPACITY TO BE NON IMO, NON DANGEROUS CARGO WHICH TO BE IN CONFORMITY WITH VESSEL'S STABILITY / SAFETY / TRIM / TANK TOP STRENGTH AND ALWAYS SUBJECT MASTER'S / OWNERS REASONABLE APPROVAL

3.LOAD PORT / DISCHARGE PORT: 1SAFE BERTH TO PORT LIANYUNGANG / 1 SAFE BERTH/PORT DJEN DJEN, ALGERIA

4. LAY/CAN: 10-15TH MARCH, 2008

5. L/D RATE:COD AT BOTH ENDS

6. DETENTION FEE USD5000.PDPR

7. FREIGHT L'SUM USD 500,000,- FIOST LSD, ALL CARGO UNDER DECK.

8. FREIGHT IS DEEMED AS EARNED ON COMPLETION OF LOADING DISCOUNTLESS AND NON RETURNABLE WHETHER SHIP AND/OR CARGO LOST OR NOT LOST.
   PAYMENT: FULL FREIGHT LESS COMM TO BE PAID TO OWNERS NOMINATED BANK ACCOUNT WITHIN 5 BANKING DAYS SIR PENREVICO BS/L AGAINST CHRTS/ DISCH PORT AGENT GUARANTEE LETTER AFTER COMPLETION OF LOADING, AND THE BS/L ARE MARKED "FRT PREPAID" TO BE RELEASED AFTER OWRS RECEIVE FULL FRT INTO THEIR BANK ACCT.

9. OWRS GUARANTEE TO RELEASE "CLEAN ON BOARD" BS/L AND IT WILL BE AGAINST SHIPPERS STAMP+SIGNED ON LOI ONLY BASSIS OWRS WORDING.
   STAMP ON BS/L SHOULD BE SHOWN "AS AGENT FOR THE CARRIER"
   CHRTS. GUARANTEE THAT THE CARGO IS NEW PRODUCTION AND NOT HEAVILY DAMAGED.
   THE MASTER HAVE THE RIGHT TO REJECT ANY UNSOUND CARGO INCLUDING    WET    AND    ATHMOSPERIC    RUSTY RUSTY,DAMAGED, ETC.... WHICH WOULD REQUIRE BILLS OF LADING TO BE CLAUSED CARGO TO BE REPLACED WITH SOUND CARGO AT

CHRTS/SHIPPERS EXPENSE AND THE TIME BETWEEN CHANGING OF
REJECTED CARGO WITH SOUND CARGO WILL BE COUNT AS LAYTIME
(IN CASE CARGO REPLACEMENT HAPPEN DUE TO UNSOUND CGO,
CHARTS PAY THE DETENTION CHARGE USD 5,000 PDPR)

10. CHARTERERS AGENTS AT BOTH PORTS SUB COMPETITIVE DIA BENDS.

11. LASHING/SECURING/DUNNAGE, IF ANY, TO BE FOR CHARTERERS ACCOUNT
AND UNDER MASTER SATISFACTION.

12. SHIP SIDE TALLY TO BE FOR OWNERS ACCOUNT AND SHORESIDE TALLY TO
BE FOR CHARTERERS ACCOUNT.

13. SHORE CRANE AT BOTH PORTS TO BE AT CHARTERERS ACCOUNT.   SHORE
CRANES ONLY TO BE USED AT ALL PORTS BOTH ENDS WHICH TO BE FOR
CHARTERERS ACCOUNT.

14. VESSEL FREE OF EXTRA INSURANCE DUE TO VESSEL'S AGE, IF ANY.

15. VESSEL FREE OF TAXES / DUES ON FREIGHT / CARGO

16. GENERAL AVERAGE AND ARBITRATION IN LONDON, ENGLISH LAW TO
APPLY.

17. CLEAN GENCON 1994 CHARTER PARTY BASED ON MAIN TERMS AGREED

18. TTL COMMISSION 5.00% (2.50% TO SEALUCKLY PLUS 1.25% TO FASTBOOM
PLUS 1.25% TO HANSU SHIP SEOUL)

FOR CHARTERERS                                         FOR OWNERS

For and on behalf of
北京祥和润国际船务有限公司
BEIJING SEALUCKLY SHIPPING INTERNATIONAL CO., LTD.

Authorized Signature(s)

# EXHIBIT "2"

*Free Translation*

Lee & Chen .

## By fax and by EMS

| To: | Shanghai Maritime Court Lianyungang Branch |
|---|---|
| Attention: | Judge Xu Guofeng |
| Address: | Room 401, South Building, Lianyungang MSA, 11 Yuanqian Road, Xugou |
| | Town, Lianyungang, Jiangsu Province, 222042 |
| Fax: | 0518 8230 0218 |
| Tel: | 0518 8230 0218 |

Cause of Action:   **Objection to Maritime Injunction Against "Yu Yin"**
                   **(2008) No 8 Shanghai Maritime Court Maritime Injunction**

1.  With reference to the captioned matter, we have accepted instruction as attorneys of
    Granada Trade Company Ltd. We now raise objection to the Maritime Injunction
    Against "Yu Yin" (2008) No 8 Shanghai Maritime Court Maritime Injunction made by
    the court on 26 March 2008.

2.  The applee is a foreign party, all necessary legalization of appointing documents is
    being processed. As a matter of urgency, we are not able to submit to the court
    legalized original documents now. Attached please find fax of "Power of Attoney" and
    "Certification of Legal Representative's ID" duly executed by the applee, we ask for
    your kind attention please. We promise that we will submit to the court legalized
    documents in due course.

3.  The applee holds that the application for maritime injunction made by Beijing
    Sealucky Shipping International Co., Ltd is wrongful for the reason that it does not
    fulfil requirements as set out in the "Law on Special Procedure for Maritime
    Proceedings".

4.  In accordance with the "Law on Special Procedure for Maritime Proceedings", Article
    56 as quoted below:

    "A maritime injunction shall be issued when the following conditions are met:
    1)   The applicant shall have a concrete maritime claim;
    2)   Applee's act violates the law or breaches agreement between the parties which
    needs to be rectified;
    3)   In urgent situation, not issuing the injunction will cause damage or enlarge
    damage."

14884728

Therefore, all three conditions has to be met when application for maritime injunction is made, in other word, the applicant has to have a good claim, the applee is in breach or in violation of law and the matter is an urgent one. The purpose for issuing maritime injunction by the maritime court is to prevent unlawful infringement suffering by the applicant. Obviously, where the applicant has no claim at all, there shall be no violation of law of breach of contract that needs to be rectified by the court by way of injunction (not to say urgent). Thus, application for maritime injunction made by the applicant must be a wrongful one, and he who shall bear all losses caused to the applee.

5. Applicant as charterer entered into a Fixture Note with applee. On 6 March 2008, as agreed, the applee shall deliver a batch of steel among other cargo, full loaded (about 5,000 MT) to the port DJEN DJEN in Algeria. (Fixture Note see Appendix I)

6. On 22 March, vessel reached loading port and started to load cargo in the evening of the same day. When loading, captain found steal concerned in very humid condition and thus very rusty (See picture taken by the captain, Appendix II). On 23 March, captain proposed a rejection notice to the agent of the applicant. However, under the circumstances that the cargo concerned are in apparent bad condition, the applicant insisted captain issue clean Bill of Lading, only after rejected by the captain, the applicant instructed stop loading cargo.

7. Regarding issuing of Bill of Lading, Article 9 of the Fixture Note so provides,

"[YY: English original as provided in the Fixture note] "

8. Pursuant to the above agreement, and provision as set out in Article 75 Maritime Law, the captain is entitled to reject humid and/or rotten and rusty cargo, or note on the Bill of Lading the true and apparent condition of the cargo when loading such cargo. The captain and applee did not conducted any action that is against the law or contract. This said, the applicant has no right to make any maritime claim against the applee.

9. Further, we have noted that applicant had another reason for maritime injunction that is the vessel is unseaworthy. The applicant claim that the vessel concerned was unseaworthy and had been restrained from leaving Lianyungang by the Lianyungang MSA. But the fact is, the "unseaworthy" as submitted by the applicant is merely the GMDSS certificate of the Captain and the Second Master lacking execution by the flag nation. However, both of the above two crew had been trained by the GMDSS and actually hold the qualification certificate as operator, and the original certificate that was duly executed has been sent to the vessel according to the Lianyungang MSA's requirement. In fact, Lianyungang MSA did not restrain the vessel from leaving the port, "unseaworthy" as claimed by the applicant also does not exist, sailing of the vessel and also performance of obligation under the Fixture Note is not affected.

2

10.  - In view of the above, the applicant does not have maritime claim at all, together with the fact that applicant did not violate the law or breached the contract, application for maritime injunction made by the applicant has no ground. The fact that the applicant made the application is in hast, irresponsible and wrongful.

11.   To concede, even the applicant in this case is entitled to ask the applee to issue clean Bill of Lading for "unclean" cargo, the applicant can only exercise its rights in a lawful way "such as maritime injunction" to force the applee or the captain to issue clean Bill of Lading as allegedly entitled by the applicant, rather than asking for discharge cargo (as the applicant has no right to ask for discharge of cargo, the captain has the right to refuse discharge). We here would like to bring to the attention of the court that application for maritime injunction to discharge cargo as made by the applicant and its basic claim brought by the applicant (such as issuing clean Bill of Lading) is not relevant at all.

12.   Wrongful application for maritime injunction made by the applicant has caused substantial loss to the applee, such as delay in charter, loss in freight (as agreed in the contract shall be USD 500,000), extra port usage fee, oil, agent fee among other losses. Detailed amount is still being calculated.

13.   According to Article 60 of the "Law on Special Procedure for Maritime Proceedings", when the applicant has made a wrongful application for maritime injunction, losses caused by which shall be compensated to the applee or related third party. The applee will initiate court proceedings shortly for the losses caused by the wrongful application made by the applicant.

14.   As the application for maritime injunction made by the applicant is wrongful, and caused losses to the applee, we here request the court retain the counter-security paid by the applicant until court proceedings terminates which has been wrongfully initiated. In addition, as the losses suffered by the applee is very likely to surpass counter-security paid by the applicant, we here request the court to increase the amount of counter-security.

As presented to Shanghai Maritime Court

Granada Trade Company Ltd.
Attorney: Shanghai Lee & Chen Law Firm
Chen Weidong, Attorney-at-law
7 April 2008

EXHIBIT "3"

## YU YIN CLAIM CALCULATION

**PERIOD 1**
21 March, 21:50 to 26 March, 1915
Proceeding from Qingdao to Lianyungang and commencing loading under the original charter up to point of breach

|  |  |  |  |  |  |
|---|---|---|---|---|---|
| 5 days detention at \$5,000 |  |  |  | \$25,000.00 |  |
| Bunkers Qingdao to Lianyungang (10.13 mt) |  |  |  | \$5,672.80 | \$30,672.80 |

**PERIOD 2**
26 March, 19:15 to 29 April
From point of breach at Lianyungang

**Original Voyage**
Lianyungang to Djen Djen, Algeria        26 March, 19:15 to 29 April

|  |  |  |  |  |  |
|---|---|---|---|---|---|
|  | Freight rate: |  |  | \$500,000.00 |  |
| LESS | Voyage Expenses: | Bunkers* | \$130,928 |  |  |
|  |  | Other** | \$56,565 | \$187,492.52 |  |
| x | Duration: |  |  | 33.4 days |  |
|  | Gross profit: |  |  | \$312,507.48 |  |
|  | Daily profit |  |  | \$9,356.51 |  |

**Substitute Voyage**
Shanghai to Karabija, Turkey        10 April, 23:55 to 11 May

|  |  |  |  |  |  |
|---|---|---|---|---|---|
|  | Freight rate: |  |  | \$500,000.00 |  |
| LESS | Voyage Expenses: | Bunkers* | \$123,088 |  |  |
|  | (inc 1.4 days steaming to | Other** | \$53,177 | \$176,265.42 |  |
|  | Shanghai) |  |  |  |  |
| x | Duration: |  |  | 30 days |  |
|  | Gross profit: |  |  | \$323,734.58 |  |
|  | Daily profit |  |  | \$10,791.15 |  |

**Apportionment**

|  |  |  |
|---|---|---|
| Anticipated profit on original voyage (up to 29 April) | \$312,507.48 |  |
| LESS Profit on new voyage earned by 29 April | \$205,031.90 | \$107,475.58 |
| (basis daily profit x 19 days) |  |  |

**LEGAL COSTS**                                                                  \$30,000.00

**TOTAL LOSSES**                                                                 \$168,148.38

Notes:        *Bunkers = 7mt fuel oil per day; \$560 pmt

|  |  |  |  |
|---|---|---|---|
| **Expenses = | Crew wages | \$25,000.00 |  |
|  | Provisions | \$6,000.00 |  |
|  | Insurance | \$6,500.00 |  |
|  | D/A Lianyungang/Shanghai | \$8,000.00 |  |
|  | D/A Djen Djen/Karabija | \$7,000.00 |  |
|  |  | \$52,500.00 | per month |
|  |  | \$1,693.55 | per day |